## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STARBUCKS CORPORATION, a Washington corporation,<br><br>          Plaintiff,<br><br>v.<br><br><starbucks1usa.com>; and <starbuckspakistan.co>,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT IN REM**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Starbucks Corporation ("**Starbucks**"), for its *in rem* Complaint against Defendants <starbucks1usa.com> and <starbuckspakistan.co> (the "**Domain Names**"), hereby alleges as follows:

### INTRODUCTION

1.       This is an *in rem* action asserted under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2)(A) ("**ACPA**"), against the Domain Names <starbucks1usa.com> and <starbuckspakistan.co>.

2.       The Domain Names incorporate the well-recognized Starbucks marks and the websites accessible via the Domain Names falsely and deceptively suggest an affiliation with Starbucks. The Domain Names and underlying websites have no affiliation to Starbucks, and their propagation has caused Starbucks harm and ongoing injury.

3.       A World Intellectual Property Organization ("**WIPO**") panelist found in a Uniform Domain Name Resolution Policy ("**UDRP**") proceeding that the Domain Names were registered or used in bad faith and ordered them to be transferred to Starbucks.

4.       The registrant of the Domain Names took legal action in Pakistan to try to prevent

33973953.1

the transfer of the Domain Names, despite Pakistan having no connection to the dispute and not being a jurisdiction to which a party could file a subsequent proceeding regarding the UDRP panelist's decision.

5.     Starbucks files this *in rem* action under the ACPA to protect its famous marks and to obtain the transfer of the Domain Names, which were registered and are being used with a bad faith intent to profit. While a WIPO panelist has already determined that the Domain Names should be transferred to Starbucks, the registrant's subsequent attempts to interfere with that administrative process necessitate this judicial proceeding to resolve the ownership of the Domain Names permanently and prevent further cybersquatting by their registrant.

## THE PARTIES

6.     Starbucks is a corporation formed under the laws of the State of Washington, with its principal place of business located in Seattle, Washington.

7.     The Defendant Domain Names are registered through P.D.R SOLUTIONS (U.S.) LLC, a Delaware limited liability company.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121(a) because the claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

9.     This Court has jurisdiction over the domain names under 15 U.S.C. § 1125(d)(2)(D)(ii)(I) because the ACPA authorizes *in rem* jurisdiction over domain names where the registrants are not subject to jurisdiction and where the registrar is "located". The registrar is located in this judicial district. On information and belief, personal jurisdiction over the registrant is not available in this judicial district.

33973953.1

2

10.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is located in this judicial district.

## FACTUAL ALLEGATIONS

### Starbucks Background

11.    Starbucks is the leading purveyor of fine Arabica coffee and maintains the world's largest number of cafes which, in addition to offering cafe, restaurant, and coffee-house services, also offers retail store services featuring many types of beverages, including coffee, tea, cocoa, coffee- and tea-based beverages, and a wide array of other food and beverage items as well as coffee- and tea-related accessories, merchandise, and a variety of other collateral goods. Beginning in 1971 as a single, Seattle-based dry goods store, Starbucks has grown to approximately 16,900 retail locations in the United States, and more than 41,000 retail locations in 88 international markets. Starbucks retail stores, and the products offered therein, prominently display trademarks owned by Starbucks (the "**Starbucks Marks**"), as further described infra.

12.    Starbucks stores conduct billions of transactions in a single year. The worldwide success of Starbucks is owed to its strong reputation for its fresh-roasted specialty coffees, brewed coffees, espresso beverages and the other products and services it provides. Starbucks has a reputation for excellence.

13.    Starbucks also offers its products and services in the United States and internationally through hundreds of authorized third parties ("**Authorized Licensees**"), including bookstores, cruise line ships, hotels, theaters, sport and entertainment venues, airports, grocery stores, retail stores, and restaurants. These Authorized Licensees display the Starbucks Marks in connection with the Starbucks products and services that they offer. Their use of such marks is licensed under one or more agreements with Starbucks. These agreements between Starbucks

33973953.1

and Authorized Licensees ensure Starbucks products and services are distributed only through authorized parties who must follow Starbucks quality controls and are accountable to Starbucks for any quality issues. By distributing products and services exclusively in this manner, Starbucks is better able to control the quality and integrity of its products and services. Starbucks monitors use of the Starbucks Marks by these accounts to ensure compliance with its agreements with Authorized Licensees.

14.    Starbucks also advertises its products and services on its website, Starbucks.com. The Starbucks Marks appear on many of the individual web pages and are prominently displayed on products promoted on the Starbucks.com website. Following are screenshots from the Starbucks website as of January 30, 2026:



33973953.1



15.     Starbucks polices and monitors all of its distribution channels to ensure strict compliance with the intellectual property policies of Starbucks.

## The Starbucks Marks

16.     Starbucks is the owner of all rights in and to the STARBUCKS mark as well as the Starbucks Siren design mark in connection with a wide variety of goods and services. Starbucks owns numerous trademark and service mark registrations for those marks in the United States and around the world, including but not limited to the following U.S. registrations:

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| | 6,783,025 | IC 035 Retail store services in the field of tea, food, beverages |

33973953.1

5

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| | 3,428,128 | IC 035 Business administration; business management; franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars |
| STARBUCKS | 1,444,549 | IC 035 Retail store services and distributorship services for coffee, tea<br><br>IC 043 Coffee cafe services |
| STARBUCKS | 2,073,104 | IC 035 Wholesale supply services featuring ground and whole bean coffee, tea, cocoa, coffee and espresso beverages…<br><br>IC 043 Restaurant, cafe and coffee house services |
| | 4,572,688 | IC 009 Vending machines<br><br>IC 016 Paper napkins, paper bags<br><br>IC 021 Insulated coffee and beverage cups, insulated vacuum bottles, coffee cups, mugs, glassware, paper cups and insulated sleeves for beverage cups<br><br>IC 025 T-shirts, polo shirts, sweatshirts, caps, hats, jackets, and aprons<br><br>IC 030 Ground and whole bean coffee, cocoa, herbal and non-herbal tea, coffee, tea, cocoa and espresso beverages, and beverages made with a base of coffee and/or espresso, beverages made with a base of tea, powdered chocolate<br><br>IC 032 Water, and other non-alcoholic drinks, namely, fruit drinks and fruit juices, fruit drinks containing fruit juices, powdered beverage mixes; flavoring syrups for making beverages; fruit juices and juice based beverages; frozen fruit beverages and frozen fruit-based beverages<br><br>IC 035 Franchising, namely, providing technical assistance in the establishment and/or operation of restaurants, cafes, coffee houses and snack bars; retail store services in the field of coffee, tea, cocoa, packaged and prepared foods, |

33973953.1

6

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| | | housewares, kitchenware…<br><br>IC 036 Charitable fund raising services<br><br>IC 041 Entertainment services, namely, the provision, organization and production of entertainment, educational, recreational and/or musical events, namely, music shows, live musical performances, concerts, and other live music events and activities. . .<br><br>IC 043 Restaurant, cafe, cafeteria, snack bar, coffee bar and coffee house, carry out restaurant, and take out restaurant services; coffee supply services for offices; contract food services; food preparation; preparation and sale of carry out foods and beverages |

Attached hereto as **Exhibits A – E** are true and correct copies of the Registration Certificates and current status reports from the U.S. Patent and Trademark Office for these registrations.

17.    Starbucks began using one or more of the Starbucks Marks in commerce at least as early as 1971, and since that time, its use of the marks has been continuous and exclusive in connection with the referenced goods and services. In particular, the Starbucks Siren (a forward-facing, crowned, twin-tailed mermaid rendered in a stylized manner, positioned at the center of a circular design, as reflected in U.S. Trademark Registration Nos. 6,783,025, 3,428,128, and 4,572,688, *see* Exhibits A, B, and E) has become inextricably linked to Starbucks products and services on a global scale.

18.    Starbucks devotes a significant amount of time, energy, and resources toward protecting the value of the Starbucks Marks and reputation. By distributing Starbucks products and services exclusively through Authorized Licensees, Starbucks is able to ensure the safety, well-being and satisfaction of consumers and maintain the integrity and reputation of Starbucks products and services.

33973953.1

19.    Due to the superior quality and exclusive distribution of Starbucks products and services, and because Starbucks is recognized as the source of high-quality products and services, the Starbucks Marks have considerable value.

20.    Starbucks has developed substantial goodwill and strong consumer recognition in the Starbucks Marks. As a result, Starbucks has established strong rights in the Starbucks Marks, which are entitled to broad protection.

**The Domain Names and Their Bad-Faith Registration and Deceptive Use**

21.    Both Domain Names are registered through P.D.R SOLUTIONS (U.S.) LLC, a Delaware-based registrar.

22.    The Domain Names both incorporate the STARBUCKS mark in full. Further, the Domain Names resolve to websites that deceptively use the iconic twin-tailed Starbucks Siren mark to suggest an endorsement by or affiliation with Starbucks that does not exist.

23.    The following is a screenshot of the <starbucks1usa.com> website as of January 30, 2026, showing use of the famous Starbucks Marks:



33973953.1

24.    The following is a screenshot of the <starbuckspakistan.co> website, which redirects to <starbucks1usa.pk>, as of January 30, 2026:



25.    As is clearly visible from the above screenshots, both of the websites at the Domain Names use an identical logo, which is misleading and infringes the intellectual property rights of Starbucks. Specifically, in addition to using the STARBUCKS mark without authorization, the websites accessible via the Domain Names publish a version of the Starbucks Siren which is a mutilated version of the famous Starbucks Siren and is highly misleading to consumers. This infringing logo adds a number "1" after the word "Starbucks," a number "1" below the face of the siren figure, the abbreviations "USA" and "PK" alongside the Siren, and the words "COFFEE", "DRINKS" and "SNACKS" below the Siren. The registrant further misuses the registered trademark symbol "®" in connection with the infringing logo to deceptively imply it is a legitimate, Starbucks-authorized mark.

26.    The content of these websites, combined with the use of the STARBUCKS mark in the Domain Names, is likely to confuse consumers into believing the sites represent official geographic branches of Starbucks. For instance, the website for <starbucks1usa.com> lists Chaudhary Yasir Abbas as "CEO/MD" and provides contact details for a purported "USA Head Office" located at 836 B Country Club, Parkway Mount Laurel, New Jersey, and a "Pakistan Office" in Islamabad, Pakistan. Starbucks does not have, and has never had, any affiliation with

33973953.1

Mr. Abbas, and has never given him or anyone else connected with the Domain Names permission to use the intellectual property of Starbucks.

27. On November 18, 2025, Starbucks initiated a UDRP proceeding asserting rights in the Domain Names.

28. On December 11, 2025, Mr. Abbas responded to the UDRP proceeding initiated by Starbucks.

29. A panelist was appointed in the proceeding and issued a ruling (*Starbucks Corp. v. Abbas*, WIPO Case No. D2025-4767 (Jan. 6, 2026)), which ruling was provided to the parties on January 16, 2026.

30. The UDRP panelist decision found that Starbucks established a prima facie case that the respondent lacks rights or legitimate interests in the Domain Names and further, that:

> Respondent [Chaudhary Abbas] acted in opportunistic bad faith at the time of registering the disputed domain names, since the disputed domain names are so obviously connected with the Complainant and the STARBUCKS mark that their very selection by the Respondent, which has no connection with the Complainant, suggests the disputed domain names were registered with a deliberate intent to create an impression of an association with the Complainant.

31. The UDRP panelist ordered that the Domain Names be transferred to Starbucks.

32. A ruling by a UDRP panelist is implemented within 10 business days following its issuance, unless either party files a judicial action in a mutual jurisdiction as defined in the UDRP.

33. The registrant indicated that he filed a lawsuit in Pakistan and presented this lawsuit to WIPO in an effort to prevent orderly transfer of the Domain Names in accordance with the UDRP panelist's decision.

34. The lawsuit filed in Pakistan is irrelevant to the disposition of the Domain Names. The registrant did not point to any UDRP Rules that allow for a lawsuit following a panelist decision in Pakistan and no such provision exists. Pakistani courts have no jurisdiction over the U.S.-based registrar or the disposition of the Domain Names, and the proceedings of those foreign courts have no bearing on the mandatory transfer required under the ACPA.

**Lack of Personal Jurisdiction Over the Registrant**

35. This Court has jurisdiction over the Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because personal jurisdiction in this judicial district is not available over the registrant based on the information currently known to Starbucks.

36. Upon information and belief, the registrant, Chaudhary Abbas, is a resident of or is located in Islamabad, Pakistan, and has affirmatively represented his location as such in the underlying WIPO UDRP proceeding.

37. Although the infringing websites list a "USA Head Office" in Mount Laurel, New Jersey, the address appears to be an apartment building or the area surrounding it. Such information appears inaccurate or illegitimate given registrant's representation that he is located in Pakistan.

38. Since personal jurisdiction is not available over the registrant in this judicial district, *in rem* jurisdiction over the Domain Names is proper and necessary to prevent ongoing trademark infringement and cybersquatting.

**FIRST CAUSE OF ACTION**

**(Violation of the ACPA, 15 U.S.C. § 1125(d)(2)(A))**

39. Starbucks realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

40. The Starbucks Marks are protectible within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)). The Starbucks Marks are distinctive and were distinctive well before the registration and use of the Domain Names.

41. The Domain Names are identical or confusingly similar to the Starbucks Marks in violation of the ACPA. The unauthorized registration and use of the Domain Names is likely to cause confusion, mistake, or deception as to the origin, sponsorship, affiliation, or approval of the websites accessible via the Domain Names.

42. The Domain Names were registered, trafficked in, or used with a bad faith intent to profit from the Starbucks Marks and their associated goodwill. Specifically, the Domain

33973953.1

11

Names were registered and used to mislead consumers and divert them from Plaintiff's official website to websites that deliberately mimic Plaintiff's brand identity for commercial gain.

43.    The registrant of the Domain Names has no intellectual property rights in the Starbucks Marks and is not commonly known by the Domain Names or any name incorporating the Starbucks Marks.

44.    The unauthorized registration and use of the Domain Names has caused, and will continue to cause, damage to Starbucks, violates the intellectual property rights of Starbucks, and is causing irreparable harm to the substantial and valuable goodwill associated with the Starbucks Marks, for which there is no adequate remedy at law, and must be enjoined to prevent further injury to the substantial and valuable goodwill associated with the Starbucks Marks.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Starbucks Corporation demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Starbucks respectfully requests that judgment be entered in its favor on each of the claims stated herein and against Defendants, and that it be awarded relief that includes, but is not limited to, an order:

A.    An injunction ordering the transfer of the Domain Names to Starbucks pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), and further directing the registrar of the Domain Names to take all necessary steps to effectuate said transfer;

B.    An order pursuant to 15 U.S.C. § 1125(d) finding that, by the acts complained of above, the marks of Starbucks have been infringed;

C.    An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding Starbucks its reasonable attorneys' fees;

D.    An order pursuant to 15 U.S.C. § 1117(a) awarding Starbucks all of its costs, disbursements, and other expenses incurred due to the unlawful conduct at issue;

E.    An order awarding Starbucks pre-judgment interest; and

33973953.1

12

F.    An order awarding Starbucks any other relief as the Court deems appropriate.

Respectfully submitted,

YOUNG CONAWAY STARGAT
& TAYLOR, LLP

OF COUNSEL:
(*Pro Hac Vice* Forthcoming)

Venkat Balasubramani, Esquire
Stacia N. Lay, Esquire
FOCAL PLLC
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: venkat@focallaw.com
Email: stacia@focallaw.com

*/s/ Timothy Jay Houseal*

Timothy Jay Houseal (No. 2880)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com

*Attorneys for Plaintiff Starbucks Corporation*

Dated:  February 2, 2026

33973953.1

13